ATTORNEY GENERAL *v.* BURNS.

1. APPEAL AND ERROR—CERTIORARI—DISBARMENT PROCEEDINGS.
   Appeal in disbarment proceedings is in nature of certiorari.

2. ATTORNEY AND CLIENT—DISBARMENT PROCEEDINGS—QUESTIONS REVIEWABLE.
   On appeal in disbarment proceedings, which is in nature of certiorari, Supreme Court does not weigh testimony, but if proceedings were properly instituted, no substantial rights denied defendant, no prejudicial errors committed, and there is competent evidence to sustain order of trial court, it must be affirmed.

3. CERTIORARI—QUESTIONS REVIEWABLE—EVIDENCE.
   On certiorari review is had of questions of law and the evidence may be examined simply to determine whether evidence is such that it will justify finding as a legitimate inference from the facts proved, whether that inference would, or would not, have been drawn by the appellate court.

4. ATTORNEY AND CLIENT—DISBARMENT PROCEEDINGS—EVIDENCE.
   Record in disbarment proceedings of attorney charged with defrauding and deceiving his clients, unethical practice, misconduct, and deceit upon courts of county *held*, to contain competent evidence to sustain order suspending him from practice of law for nine months (3 Comp. Laws 1929, § 13585, as amended by Act No. 171, Pub. Acts 1931).

Appeal from Kent; Parker (James S.), Pugsley (Earl C.), and Simpson (John), JJ., presiding. Submitted April 9, 1936. (Docket No. 54, Calendar No. 38,659.) Decided June 16, 1936.

Disbarment proceedings by Harry S. Toy, Attorney General, against Robert H. Burns. From order of suspension, defendant appeals. Affirmed.

*David H. Crowley,* Attorney General, and *Edmund E. Shepherd, Gordon E. Tappan* and *Weston L. Sheldon,* Assistants Attorney General, for petitioner.

*Paul O. Strawhecker,* for defendant.

EDWARD M. SHARPE, J. The attorney general filed a petition for disbarment in the Kent county circuit court in May, 1935, charging generally that respondent Robert H. Burns is guilty of defrauding and deceiving his clients; and guilty of unethical practice, misconduct, and deceit upon the courts of Kent county. Three circuit judges, sitting *en banc,* heard evidence in support of the charges, found him guilty as charged and suspended him from practice for nine months. Defendant reviews by appeal.

The principal charge in the complaint is based upon respondent's dealings with Edward Cervantes and wife who were arrested in Grand Rapids for breaking and entering a store. Shortly after the arrest respondent called upon Cervantes and wife and agreed to represent them at the examination before the examining magistrate and was paid $100 as a retaining fee. An examination was had and Cervantes and wife were bound over to the superior court of Grand Rapids for arraignment where Cervantes was arraigned and pleaded not guilty.

During the time that these proceedings were taking place, Cervantes turned over to respondent, Burns, a new Hudson car valued at more than $1,000. Later Cervantes was tried and convicted, the trial consuming less than one hour. At the trial respondent, Burns, who had agreed to defend Cervantes, did not ask a question as the jury was drawn, did not question any witness during the trial, nor make any argument whatsoever.

In the present proceedings it is the claim of Cervantes that at the time he assigned title of the Hudson car to Burns it was with the express understanding that Burns would so fix things that both Cervantes and wife would gain their freedom, while it is the claim of respondent Burns that all he agreed to do was represent Cervantes at the trial.

It appears to us that the principal question involved in this cause is whether there is any testimony to support the findings of the lower court. In *Attorney General* v. *Nelson,* 263 Mich. 686, 703, we said:

"The appeal in the instant case is in the nature of certiorari. We do not weigh the testimony. If the proceedings were properly instituted, no substantial rights denied respondent, no prejudicial errors committed and there is competent evidence to sustain the order, we must affirm it."

And in *Re Consolidated Freight Co.,* 265 Mich. 340, 353 (4 P. U. R. [N. S.] 397), we said:

"The office of a certiorari is not, however, to review questions of fact, but questions of law. And, in examining into the evidence, the appellate court does so, not to determine whether the probabilities preponderate one way or the other, but simply to determine whether the evidence is such that it will justify the finding as a legitimate inference from the facts proved, whether that inference would, or would not, have been drawn by the appellate tribunal."

See, also, *Attorney General* v. *Lane,* 259 Mich. 283.

Our statute, 3 Comp. Laws 1929, § 13585, as amended by Act No. 171, Pub. Acts 1931, concisely sums up the grounds for suspension of an attorney:

"Any attorney and counselor may be removed or suspended, who shall be guilty of deceit, malpractice, crime, misdemeanor or wilful malfeasance."

"The law is well settled that unfaithful or fraudulent conduct of an attorney toward his client, showing the unfitness of the attorney to handle the affairs of others, is good ground for suspension or disbarment. Thus obtaining money or property from a client by extortion, or by false representations relative to matters intrusted to him as an attorney, or for which he fails to render any adequate service, warrants disbarment." 6 C. J. p. 589.

We think the following testimony of the witness Cervantes is some evidence in support of the findings of the special trial court:

"I came to plead guilty, he (a third person) did not say any more that he had it arranged, until I came up here again before Judge Taylor. He was there in the chamber, and he told me that he could not do anything, he could not arrange anything for me. So then I told Mr. Burns if he wanted to represent me again, and he said 'Yes.' Then he advised me to change my plea from guilty to not guilty. My wife also changed her plea, then the other fellow that is with me also, and right after we left the court room he told me that I should put this car in his name. * * *

"Q. Now, what did Mr. Burns then say he could do for you, if anything?

"A. Well, Mr. Burns said that he went up to the county jail and told me that he was going—like he had told me previously—that he was going to take me out when I signed this car over to him; that is what he told me. * * *

"He did not say what it would cost me, he just told me to sign the car over to him, and to trust him, have faith in him, that I would go home with my wife, we would both go out free. * * *

"I did not sign the car over to him at the sheriff's office. I don't know, it was some place near here.
* * *

"*Q.* How many times did he visit you at the jail?

"*A.* Well, he never visited me except when they went down to tell him that I wanted to see him. It was a very few times, I don't think it was over three or four times during all the time that I was confined in the county jail previous to my trial.

"*Q.* How long did he talk with you at each time?

"*A.* Well, he did not talk very long. It seems he didn't have much time. * * *

"*Q.* Who was your attorney at that trial?

"*A.* Mr. Burns.

"*Q.* How long did the trial last?

"*A.* I don't know, maybe an hour, something like that, I don't exactly know the time, I didn't notice.

"*Q.* Did you testify on that trial?

"*A.* I did not.

"*Q.* Did Mr. Burns put any witnesses on the stand in your behalf?

"*A.* No, sir. * * *

"He just told me that he wanted me to be found guilty by a jury, and when we sat down there before the trial he says, 'We are just going to listen to the testimony,' and he says, 'We are not going to say anything, we are just going to listen to the testimony, and none of you is going to take the stand or anything.' * * *

"*Q.* Did he ever say anything to you about the judge liking your car?

"*A.* He did.

"*Q.* What did he say about it?

"*A.* He said that the judge had been in my car with him, and also the judge's daughter, and that she had said to the judge that she liked, she admired the car, and that she liked for her father to buy her one like that, and I guess the judge said he would

buy her one sometime, or something like that. The way he expressed it to me, he said the judge liked the car. I didn't know what to think about that, seeing that he didn't come and see me at all over to the county jail until somebody went after him to call him up to see me, and I was undecided what to do, because I really had some distrust for him then, but he assured me that—I asked him 'How did you happen to know this, how are you so sure that we will get out if I give up this car?' And he says, 'I can't tell you.' I says, 'Well, I have to know,' and I says, 'If I have to give up this car I want to know how you are so sure, how do you know it?' He says he had talked—he had this 'straight from the boss.' I understood him saying 'straight from the boss,' that means referring to Judge Taylor.

"*Q.* Did he explain to you what he meant by 'straight from the boss?'

"*A.* No, sir.

"*Q.* He left you to draw your own conclusions?

"*A.* Yes."

We are of the opinion that no substantial rights were denied respondent Burns; no prejudicial error committed; and that the record contains competent evidence to sustain the order of the trial court.

The order appealed from is affirmed.

NORTH, C. J., and FEAD, WIEST, BUTZEL, and BUSH-NELL, JJ., concurred. TOY, J., did not sit. POTTER, J., took no part in this decision.